J-S13041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                :          PENNSYLVANIA
                                :
        v.                      :
                                  :
                                :
ASHLEY ROSE CURRY           :
                                :
        Appellant        :   No. 726 MDA 2024

Appeal from the PCRA Order Entered April 26, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001038-2015

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:        **FILED: AUGUST 26, 2025**

Appellant Ashley Rose Curry appeals from the order denying her first Post Conviction Relief Act[1] (PCRA) petition. Appellant argues that her trial counsel was ineffective and claims that the PCRA court erred in denying her petition. After review, we affirm.

A prior panel of this Court summarized the factual history of this case as follows:

> Appellant was charged with [aggravated assault, ethnic intimidation, and simple assault[2]] after she shot Ms. Jamie Roland . . . on the afternoon of February 3, 2015. Appellant proceeded to a jury trial, which was held on July 18-22, 2016. Both the Commonwealth and the defense presented the testimony of numerous witnesses who observed the altercation in question.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2702(a)(1), 2710(a), and 2701(a)(1), respectively.

The Commonwealth first presented Ms. Alecia Glen[n]-McCowin,[3] who testified that on the afternoon of February 3, 2015, she was driving on Lancaster Avenue in Columbia, Pennsylvania, when she was forced to stop behind a vehicle driven by Appellant. Although Appellant had the green light and the right of way to turn, Appellant did not proceed even though there was no traffic coming from the opposite direction. Ms. Glen[n]-McCowin chose to "toot the horn" of her vehicle to get Appellant's attention. N.T. Jury Trial (N.T.), July 18–22, 2016, at 278. Appellant looked back at Ms. Glen[n]-McCowin in her rearview mirror and continued to hesitate.

After Appellant turned into the parking lot of Musser's Market, Ms. Glen[n]-McCowin followed and parked near the Dollar Store. Appellant's boyfriend, Stephen Smith, exited Appellant's vehicle and told Ms. Glen[n]-McCowin that it was rude of her to honk the horn. Ms. Glen[n]-McCowin asserted that she approached the couple to explain why she honked her horn and to apologize if she had offended them. Appellant began repeatedly yelling "n----r" out her window to Ms. Glen[n]-McCowin, who is African-American. *Id.* at 268, 278. Ms. Glen[n]-McCowin accused Appellant of being on drugs and responded, "I don't have time for this." *Id.* at 268.

After Appellant exited her vehicle, Ms. Glen[n]-McCowin claimed Appellant kicked her, spit at her, and spouted racial slurs. Appellant kicked Ms. Glen[n]-McCowin so hard that she caused an open cut to begin bleeding through [Ms. Glenn-McCowin's] pants. As Appellant continued to scream, the altercation got the attention of bystanders, several of whom rushed to assist Ms. Glen[n]-McCowin, including [Ms. Roland]. None of the bystanders knew Ms. Glen[n]-McCowin before this encounter.

Thereafter, Ms. Glen[n]-McCowin observed Appellant pull out a firearm. Although Ms. Glen[n]-McCowin admitted that she did not "know where [Appellant] got the gun from," she indicated that when she saw the black gun, "[w]e all thought we was gonna get shot." N.T. at 284, 333–35. Ms. Glen[n]-McCowin testified that Appellant shot [Ms. Roland] in the stomach when [Ms. Roland] was standing in front of Ms. Glen[n]-McCowin. After [Ms. Roland] collapsed to the ground, Appellant got in her car and remained

_____

[3] In the notes of testimony from trial, the witness' name was spelled "Glenn-McCowin." N.T., 7/19/16, at 266. Accordingly, we will utilize that spelling throughout this Memorandum.

there until the police arrived. Ms. Glen[n]-McCowin averred that no one verbally or physically threatened Appellant before the shooting and indicated that no one prevented her from leaving the parking lot.

[Ms. Roland] . . . survived the attack [and] testified that on the afternoon in question, she was about to enter Musser's Market with her sister, Crystal Manfred, when they saw Appellant kicking and spitting on a black woman, who was later identified as Ms. Glen[n]-McCowin. [Ms. Roland] indicated that she and Ms. Manfred ran to . . . Ms. Glen[n]-McCowin's aid while she was on the ground near Appellant's vehicle. [Ms. Roland] confirmed that Appellant was repeatedly yelling racial slurs at all of them; all three women ([Ms. Roland], Ms. Glen[n]-McCowin, and Ms. Manfred) are African–American.

Observing Appellant retrieve a firearm from her vehicle, [Ms. Roland] heard Appellant threaten to shoot Ms. Manfred. After "[a]drenaline kicked in," [Ms. Roland] "jumped[,] and [Appellant] shot" her in the stomach. *Id.* at 366. [Ms. Roland] denied chasing or running after Appellant and testified that Appellant could have walked or driven away during the entire encounter. As a result of the shooting, [Ms. Roland] sustained a shattered hip and a broken femur.

Ms. Manfred testified similarly, indicating that as she and [Ms. Roland] were about to enter Musser's Market on the day in question, they heard a commotion between an older African–American woman and a younger Caucasian woman, neither of whom she knew. Ms. Manfred indicated that she and [Ms. Roland] felt it necessary to settle the conflict down because . . . Appellant[] was screaming racial slurs at the African-American woman (Ms. Glen[n]-McCowin), who "was so much older." *Id.* at 401–402. Ms. Manfred observed Appellant reach into her vehicle, pull out a gun, and shoot [Ms. Roland]. As Ms. Manfred's immediate concern was for [Ms. Roland], who is her sister, she ran to the aid of [Ms. Roland], who had collapsed behind Appellant's car. Ms. Manfred was worried about [Ms. Roland's] location as Appellant stated that she would "run her . . . black a-- over." *Id.* at 407, 417. Ms. Manfred denied hitting, grabbing, or threatening Appellant in any way.

The prosecution also presented the testimony of Edward Hamilton Young, who was employed as the store manager of Musser's Market. Young was about to enter the market when he heard

Appellant repeatedly screaming "f-----g n----r" at a black woman in the store parking lot. *Id.* at 442–43. Young had not met either woman before this occasion. Young approached the women, thinking he would have to try to deescalate the situation as store manager. Even after Appellant spit in Ms. Glen[n]-McCowin's face and kicked her, Mr. Young observed that Ms. Glen[n]-McCowin "was amazingly calm, trying to talk [Appellant] down a little bit." *Id.* at 445.

Mr. Young also saw two women "race[ ] past" him to "form a wall . . . and back[ Appellant] off, away from [Ms. Glen[n]-McCowin] to protect [her]." *Id.* He also observed Appellant, who was empty-handed, enter the driver's side of her vehicle and return with a gun. At that point, Mr. Young rushed to call authorities from the manager's office and when he returned, Appellant had shot [Ms. Roland], and Ms. Manfred was hysterical on the ground.

Sergeant Samuel Stein of the Columbia Borough Police Department testified that after Appellant was arrested and transported to the station, Appellant was placed in a cell, where she attempted to commit suicide by removing her shirt and tying it around her neck and the bars of the call. When officers found Appellant unconscious, they took her to the hospital where she repeatedly became enraged and stated that "the b---h got what she deserved and that she had shot her." *Id.* at 504.

Defense counsel first presented the testimony of Ms. Judy Kulish and her husband, Mr. Donald Kulish, who had observed the incident from their home on Barber Street. Ms. Kulish admitted that she was too far away to hear what the parties were saying as the distance between her house and the parking lot is "about the length of a football field." *Id.* at 547. Mr. Kulish testified that he had observed the incident, but admitted that he "wasn't really paying attention . . . to what race [the people in question] were." *Id.* at 588, 605. Mr. Kulish thought that the Caucasian male he observed running from the scene of the shooting was the perpetrator.

The defense also presented the testimony of Sharon Lintner, who did not see the shooting occur nor hear the substance of the altercation. Smith, who is Appellant's boyfriend of thirteen years, claimed that he only heard "bits and pieces" of the argument in question due to noise from the vehicle's stereo playing and air vent blowing and the fact that Ms. Glen[n]-McCowin spoke softly. N.T. at 633–37. He denied hearing Appellant use any racial slurs

- 4 -

but indicated that Appellant grabbed her firearm after a group of people rushed at Appellant and threatened to hurt her. When the group continued to advance towards Appellant, Smith indicated that a shot was fired.

Appellant testified on her own behalf. She admitted to calling Ms. Glen[n]-McCowin a "dirty n----r scumbag" and "filthy b--ch," spitting her in the eye, and kicking her in the leg. *Id.* at 722, 724–25, 770–772, 734. However, Appellant asserted that Ms. Glen[n]-McCowin initiated the altercation with the same behavior. Appellant characterized [Ms. Roland] and Ms. Manfred as "two extremely large women charging at me like wild animals coming fast." *Id.* at 730. Appellant asserted that she attempted to go back to her car but observed something resembling a weapon pointing at her inside Ms. Manfred's pocket. Thereafter, Appellant grabbed her firearm and took it out of the vehicle. She claims that [Ms. Roland] threatened to take the firearm away from her. Appellant contended that she shot [Ms. Roland] as she felt her life was in danger.[4]

* * *

On October 11, 2016, the trial court imposed an aggregate sentence of six years and two months to sixteen years' imprisonment.[5] On October 13, 2016, Appellant filed a post-sentence motion, which the trial court subsequently denied on December 14, 2016.

*Commonwealth v. Curry*, 121 MDA 2017, 2017 WL 6628708, at *1-3 (Pa.

Super. filed Dec. 29, 2017) (unpublished mem.) (some formatting altered).

On appeal, a prior panel of this Court affirmed Appellant's judgment of

---

[4] Appellant was convicted of ethnic intimidation and simple assault with respect to her attack on Ms. Glenn-McCowin, and Appellant was also found guilty of aggravated assault with respect to her shooting Ms. Roland. *See* Crim. Information, 3/30/15; N.T., 7/22/16, at 942.

[5] The simple assault committed against Ms. Glenn-McCowin was the predicate offense for ethnic intimidation also committed against Ms. Glenn-McCowin. *See* Crim. Information, 3/30/15; *see also* 18 Pa.C.S. § 2710(a).

- 5 -

sentence. *See id.* at *7. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on June 13, 2018. *See Commonwealth v. Curry*, 54 MAL 2018, 187 A.3d 903 (Pa. 2018).

On May 20, 2019, Appellant filed a timely *pro se* first PCRA petition. After numerous delays and several appointments and changes of counsel, Appellant filed an amended counseled PCRA petition. Following a hearing, the PCRA court denied Appellant's PCRA petition. *See* Order, 4/26/24. This timely appeal followed. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Did the PCRA court err when it concluded that [Appellant's] trial counsel had a reasonable basis for not calling a toxicologist?

2. Did the PCRA court err when it concluded that trial counsel's admission of these records without an expert to explain the toxicology report would confuse the jury?

3. Did the PCRA court err when it concluded that trial counsel's lack of reasonable basis for failing to properly introduce evidence of the crack pipe failed to demonstrate a prejudice?

4. Did the PCRA court err when it concluded that trial counsel's failure to explore possible favoritism towards Ms. Roland when she was not charged with possession of paraphernalia.

5. Did the PCRA court err when it concluded that trial counsel's failure to explore possible favoritism towards Ms. Roland when she was not [separately found in violation of her probation] for having [possessed] a crack pipe and [having] cocaine in her blood?

6. Did the PCRA court err when it concluded that trial counsel's failure to call Mr. Massad Ayoob as an expert witness on the subject of disparity of force to justify the self-defense argument lacks arguable merit?

Appellant's Brief at 8 (some formatting altered).

In reviewing an order denying a PCRA petition, our standard of review is well settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (citation and quotation marks omitted). A PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144-45 (Pa. 2018) (citations omitted). Further, we note that:

> Counsel is presumed to be effective and it is a petitioner's burden to overcome this presumption by a preponderance of the evidence. To succeed on a claim of ineffective assistance of counsel, a petitioner must establish three criteria: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and (3) that petitioner was prejudiced as a result of the complained-of action or inaction. The failure to satisfy any one of these criteria is fatal to the claim. To establish prejudice in the context of this standard, a petitioner must establish that there is a reasonable probability that the result of the proceeding would have been different but for the complained-of conduct.

*Commonwealth v. Thomas*, 323 A.3d 611, 620-21 (Pa. 2024) (citations omitted). Finally, it is well settled that counsel is not ineffective for failing to

raise a meritless claim. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006).

Appellant's issues are related, and we dispose of all six issues concurrently.[6,7] The PCRA court concluded that Appellant failed to satisfy the prejudice prong of the test for ineffective assistance of counsel and stated:

_____

[6] We note that Appellant's brief fails to conform to Pa.R.A.P. 2119(a). Specifically, the argument section is not divided into as many sections as there are questions presented, and Appellant's arguments do not correspond to the questions presented. ***See*** Pa.R.A.P. 2119(a) (stating the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Although we do not condone Appellant's failure to comply with our Rules of Appellate Procedure, we do not find that appellate review is completely precluded and will not quash the appeal. ***See*** Pa.R.A.P. 2101 (providing that if defects in the appellant's brief "are substantial, the appeal or other matter may be quashed or dismissed"). Accordingly, to the extent that we are able, we will address the issues presented. ***See, e.g., Commonwealth v. Lyons***, 833 A.2d 245, 252 (Pa. Super. 2003) (declining to quash where arguments can reasonably be discerned from the defective brief).

[7] Appellant's issues appear to challenge only trial counsel's effectiveness in connection to her conviction for aggravated assault against Ms. Roland. In her brief, there is no mention of any alleged deficiency on the part of trial counsel with respect to the convictions for simple assault and ethnic intimidation committed against Ms. Glenn-McCowin as the issues focus on Ms. Roland's alleged drug use, Ms. Roland's probation status, and Appellant's use of force in self-defense relative to Ms. Roland. ***See*** Appellant's Brief at 8, 14-30. However, even if the issues Appellant raised on appeal were intended to challenge the effectiveness of trial counsel relative to the convictions for simple assault and ethnic intimidation, we would conclude that Appellant has not satisfied the prejudice prong of the test for ineffective assistance of counsel. ***See Thomas***, 323 A.3d at 620-21. In the issues presented on appeal, Appellant has failed to establish a reasonable probability that the

*(Footnote Continued Next Page)*

[Appellant's] claims fail for a reason that applies equally to all of her claims[:] she was wholly unable to provide sufficient evidence for self-defense, or justification, theory. For a defendant to establish a justification defense, the defendant must show (1) she reasonably believe[d] she was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) she was free from fault in provoking the difficulty; and (3) **she did not violate any duty to retreat**. ***Commonwealth v. Sepulveda***, 55 A.3d 1108 (Pa. 2012) (emphasis added).[8] Regardless of any fear

_____

result of the trial would have been different with respect to her convictions for simple assault and ethnic intimidation. ***See id.*** In addition to Ms. Roland, Ms. Glenn-McCowin, Ms. Manfred, and the store manager, Mr. Young, also testified to Appellant's actions, which included kicking and spitting on Ms. Glenn-McCowin and Appellant's repeated use of slurs and racial epithets. ***See*** N.T., 7/19/16, at 268-69, 278, 280-81, 292, 314-15, 317, 401, 403, 407; N.T., 7/20/16, at 442-444. Indeed, the evidence was overwhelming with respect to the convictions for simple assault and ethnic intimidation. ***See, e.g., Commonwealth v. Webb***, 236 A.3d 1170, 1182 (Pa. Super. 2020) (finding that counsel was not ineffective and that the appellant failed to establish prejudice where there was overwhelming evidence of the appellant's guilt introduced at trial). Accordingly, to the extent that Appellant challenges trial counsel's effectiveness relative to the convictions for simple assault and ethnic intimidation, we conclude that she has failed to establish prejudice, and she is not entitled to relief.

[8] The ***Sepulveda*** Court cited 18 Pa.C.S. § 505. ***See Sepulveda***, 55 A.3d at 1124. Section 505 provides in relevant part as follows:

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

\*   \*   \*

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his

*(Footnote Continued Next Page)*

- 9 -

[Appellant] purportedly felt during the incident, at all times she had an avenue of retreat. [Appellant] exited her car to violently confront Ms. Glenn-Mc[C]owin instead of staying in her vehicle, as her boyfriend did after making contact with Ms. Glenn-Mc[C]owin. [Appellant] later, now confronted by Ms. Roland and Ms. Manfred, went back to her car, retrieved her firearm, and returned to the confrontation as the only armed individual. [Appellant] claims throughout trial and her petition that her actions were driven by a fear of bodily harm[,] but [she] repeatedly forewent the safest option available to her, which was to return to her vehicle. In fact, only after she had shot Ms. Roland did [Appellant] seemingly grasp the reasonableness of this course of action, as she waited in the car while the officers arrived on scene to a now shot Ms. Roland lying in the parking lot. Accordingly, due to [Appellant's] ever-present failure to retreat from the confrontation, these and all other claims made by [Appellant] must fail.

PCRA Ct. Op., 4/26/24, at 13-14.

After review, we discern no error in the PCRA court's conclusion. Appellant's defense at trial was that her use of deadly force was justified, as she acted in self-defense. **_See_** Appellant's Pre-trial Motion, 7/7/16; Appellant's Proposed Points for Charge, 7/7/16; N.T., 7/19/16, at 198, 202, 252; N.T., 7/21/16, at 902-907; **_see also_** Appellant's Brief at 15. As the PCRA court noted, in order for Appellant to establish self-defense, she was required to, among other things, establish that she did not violate a duty to retreat. **_See_** PCRA Ct. Op., 4/26/24, at 13. Here, the PCRA court concluded that because Appellant violated her duty to retreat, the defense of self-defense

place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(b)(2)(ii).

was not available. **See id.** We note that Appellant does not challenge nor even mention the failure to retreat in her brief. Because Appellant violated her duty to retreat, self-defense was not an available defense at trial. **See Sepulveda**, 55 A.3d at 1124; 18 Pa.C.S. § 505(b)(2)(ii). Therefore, we agree with the PCRA court that Appellant cannot establish the prejudice prong of the test for ineffective assistance of counsel as Appellant cannot show that, but for counsel's action or inaction, there is a reasonable probability that result of the trial would have been different. **See Thomas**, 323 A.3d at 620-21. Accordingly, Appellant is not entitled to relief on any of the issues presented, and we affirm the PCRA court's order. **See id.**

Order affirmed. Jurisdiction relinquished.[9]

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/26/2025

_____

[9] On December 12, 2024, Appellant's counsel filed a merits brief on Appellant's behalf. On June 25, 2025, Appellant filed a *pro se* motion requesting to represent herself on appeal. It is well settled that when a counseled appellant seeks to proceed *pro se* on appeal, the proper response is to remand to the lower court for an on-the-record hearing to determine whether the appellant's waiver of counsel is knowing, intelligent, and voluntary. **Commonwealth v. Greer**, 316 A.3d 623, 629 (Pa. 2024) (citing **Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998). "However, if the request to proceed *pro se* is filed **after** counsel has filed a merits brief, the request is considered untimely." **Id.** (citation omitted) (emphasis added). Accordingly, because Appellant's request was filed after counsel filed a merits brief, we dismiss Appellant's *pro se* request as untimely. **See id.**; **see also Commonwealth v. Cannon**, 1255 MDA 2023, 2024 WL 5245142, at *2, n.3 (Pa. Super. 2024); Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value). Further, after Appellant filed her *pro se* request to proceed *pro se*, Appellant's counsel filed an application to withdraw as counsel of record. Because we conclude that Appellant's request to proceed *pro se* is untimely, Appellant's counsel's application to withdraw is DENIED.

- 12 -